```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
SHERRI L. GLOVER

                    Plaintiff,           08-CV-218

          v.                             DECISION
                                         and ORDER
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant
_____
```

## INTRODUCTION

Plaintiff Sherri L. Glover ("Glover") brings this action pursuant to §205(g) of the Social Security Act ("the Act")seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for both disability insurance benefits and supplemental security income. Specifically, Glover challenges Administrative Law Judge Marilyn D. Zahm's ("ALJ")determination that she is not disabled under the sequential evaluation process(20 C.F.R. 404.1520(a) and 416.920(a)) set forth by the Social Security Administration under the Social Security Act. Plaintiff alleges that the ALJ's decision was erroneous and unsupported by both substantial evidence and applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on grounds that the Commissioner's decision was supported by substantial evidence and based upon the application of the correct legal standards. Glover opposes the Commissioner's motion and cross-moves for judgment on the

pleadings, on grounds that Commissioner's decision was erroneous and not supported by substantial evidence in the record. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence on the record, and is in accord with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

Glover filed an application for disability insurance benefits and supplemental security income under Title II and Part A of Title XVIII of the Social Security Act on October 20, 2003 for a period of disability beginning on October 4, 2003. (T. 68) Glover's claim was based on persistent back pain and a pulmonary embolism for which she was hospitalized on October 4, 2003. Plaintiff's application was denied by the Social Security Administration initially on January 27, 2004. Glover timely filed a request for hearing on March 24, 2004.

Thereafter, Glover appeared represented by Counsel at an administrative hearing before the Administrative Law Judge ("ALJ") Marilyn Zahm on July 5, 2006 in Buffalo, New York. (T. 452A-90). In a decision dated August 10, 2007, the ALJ determined that Glover was not disabled within the meaning of the Act. (Tr. 14-25). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Glover's request for

review on January 28, 2008. (Tr. 5-7). On March 14, 2008, Glover filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Glover's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for

judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Glover can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II. **Proof of Disability**

To establish disability under the Act, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §423(d)(1)(A). The statute additionally requires that the claimant's impairment be

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§423(d)(2)(A)

In making a determination as to a plaintiff's disability, the Commissioner is required to apply the five-step process set forth

in 20 C.F.R. §416.920. The Second Circuit has described the five-step process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

See Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996) (citations omitted). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the last step, and thus must demonstrate the existence of jobs in the economy that the claimant can perform. See, e.g., Kamerling v. Massanari, 295 F.3d 206, 210 (2d. Cir. 2002). When employing the five-step analysis, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." See Brown v. Apfel, 174 F.3d

59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

Finally, the Commissioner must give special consideration to the findings of a claimant's treating physician. A treating physician's opinion is controlling if it is "well supported by medical findings and not inconsistent with other substantial record evidence." See Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see C.F.R. § 416.927(d)(2). The more consistent a treating physician's opinion is with other evidence in the record, the more weight it will be accorded. See § 416.927(d)(4).

Applying the required five-step framework to Glover's claim, the ALJ found that (1) plaintiff has not engaged in substantial gainful activity since October 4, 2003; (2) plaintiff has the following severe impairments: a back disorder, depression, anxiety, and substance abuse, in remission since April 2005;(3) plaintiff's impairments or combination of impairments did not meet or exceed one of the listed impairments; and (4) plaintiff has the residual functional capacity ("RFC") to perform light work not requiring the performance of complex tasks, which includes Glover's past relevant work as either an assembler or fast food worker. (Tr. 16-24). Since the ALJ found that Glover could perform her past relevant work, the ALJ held that she was not disabled under the Act, and therefore did not proceed to step five of the sequential evaluation.

Plaintiff argues that the ALJ's findings were not supported by the record. First, she asserts that the ALJ substituted her own interpretation of the medical evidence in making her residual functional capacity determination.(Docket #9, 5.) Second, she claims that the ALJ improperly discounted the opinions of her treating physicians, and afforded the opinion of consulting medical examiner Dr. Fenwe Meng undue weight in her determination that Glover was not disabled.[Docket #9, 7].

**A. <u>The ALJ's decision is supported by substantial medical evidence.</u>**

Glover asserts that the ALJ improperly relied on her own medical opinion in determining that Glover retained the residual functional capacity to perform light work because "no medical source has opined that Plaintiff is capable of light exertional work." (Docket #9, 7.) There is, however, substantial evidence in the record which supports the ALJ's finding. In December 2003, the Social Security Administration's consulting physician, Dr. Fenwe Meng examined Glover as part of the agency's initial determination that she was not qualified for disability benefits. At that time, Dr. Meng opined that Glover's prognosis was "borderline" and asserted that "claimant needs to follow up with her medical doctor closely." (Tr. 248.) However, Dr. Meng went on to suggest that she would have only "minimal limitation with gross activity due to her back condition including reaching, pushing and heavy lifting."

Based on his physical examination and observation of Glover, Dr. Meng also noted "minimal" limitations in her ability to walk, stand, and climb stairs. (T. 248.) Dr. Meng concluded that she should "avoid frequent, repetitive lifting of heavy weights, bending or twisting because of her back impairment." (T. 254.) However, Dr. Meng offered no opinion of whether Glover retained the capacity to pursue gainful employment.

On December 5, 2003, Dr. Ravi Sinha, one of Glover's treating physicians, offered the opinion that she was ready to go "back to working" four hours per day so long as she alternated between sitting and standing for no more than two hours each over the course of her day. (T. 244.) In January, another of Glover's treating physicians, Dr. Bidani, was cited in a state agency disability analyst's report as suggesting that she should not lift more than ten pounds, stand for more than two hours, sit for more than six hours, and that she was limited in her capacity to push or pull with her upper extremities. (T. 254.) In June 2005, Dr. Sinha again assessed Glover's capacity to work. His opinion was based not on a thorough physical examination of Glover, but on her own reported symptoms and capacities. In her own judgment, as reflected in Dr. Sinha's report, Glover was capable of occasional or frequent lifting of less than ten pounds, two hours of standing or walking in an eight hour day, periodic alternation of sitting

and standing, and limited capacity to push and pull with the lower extremities. (Tr. 323-326.)

Almost exactly a year later, on July 3, 2006, Dr. Sonita Bakhai, who had replaced Dr. Sinha as Plaintiff's primary care physician, offered the opinion that while her pain might cause her to miss work four days or more each month, and that her ability to sit, stand, walk, and lift had declined slightly, that she could still work a four hour day before her pain would prevent her from the performance of her tasks.(T.374.)

An ALJ is not "free to set his own expertise against that of a physician who [submitted an opinion] or testified before him." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1997), *quoting* McBrayer v. Secretary of Health and Human Services, 712, F.2d 795, 799 (2d Cir. 1983). Further, although an ALJ has "considerable and constant exposure to medical evidence" she is not free to make inferences or diagnoses which are not advanced in the medical record. Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000) (ALJ erred in disregarding medical testimony and diagnosing "severe osteoarthritis" where diagnosis was not in medical record); Balsamo, 142 F.3d at 81 (ALJ improperly diagnosed "no atrophy of any muscular groups" absent any medical opinion in the record). In this case, there is nothing in the ALJ's decision, or in the transcript that constitutes an unfounded medical diagnosis on her part. Her assessment of Glover's residual functional capacity rests squarely on citation to treatment

and evaluation notes, and plaintiff's own testimony about her daily life activities adduced at her hearing on July 5, 2006. (T. 18 - 24)

In sum, the assessments of Glover's treating physicians of her capacities over the course of three years from 2003 through 2006 are remarkably consistent with each other. From her initial examination by Dr. Meng through her physical capacities evaluation by Dr. Bakhai, there was little change in the medical opinion about her capacity to work with "minimal" limitations over the course of a four hour day. Unlike cases in which the medical authorities contradict each other and have to be weighed for credibility by the ALJ (*See*, Balsamo, 142 F.3d at 80), here, the weight of both testimony and the medical record provided a substantial basis for the ALJ's conclusions.

**B. The ALJ accorded appropriate weight to the opinions of the Plaintiff's treating physicians.**

Glover correctly points out that the opinions offered by Dr. Bidani, Dr. Sinha, and Dr. Bakhai are all supported by substantial evidence in the record, although much of that evidence is adverse to her case. On November 21, 2003, after the onset of her alleged disability, a physical therapy intake examination showed that she had a limited range of motion in her lower back, but walked with a normal gait. (T.223.) On December 5, 2003, a physical examination conducted by her treating physician revealed that she had normal power in her limbs. (T. 244.) Two years later,

Dr. Sinha again examined Glover and found that she had normal power in her legs. (T. 439.) These findings are entirely consistent with those of the medical source given the most weight by the ALJ, consulting examiner Dr. Fenwe Meng.

In December 2003, the Plaintiff underwent an MRI of her lower spine which revealed a narrowing of the space between discs at L4-L5 and L5-S1 (T. 249). In August 2006, the procedure was repeated, revealing that the same discs were now herniated and that the thecal sac had been compromised. (T.426) Nevertheless, Dr. Bakhai did not revise her assessment of Plaintiff's capacity to work in a questionnaire that she had forwarded to the ALJ on July 3, 2006. Further, Dr. Sinha, who saw Plaintiff both before and after her 2003 MRI, did not impose new restrictions on her in the medical source statement that he submitted in June 2005. (T. 244, 440) Neither of her treating physicians designated their patient disabled despite diagnostic evidence that her condition had deteriorated over a three year period, and despite being given multiple opportunities to do so.

Under the Social Security Administration's treating physician rule in 20 C.F.R. §404.1527(d)(2) the opinions of treating physicians are given "controlling weight" where they are supported by medically acceptable diagnostic techniques and are not inconsistent with other substantial evidence in the case record. Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

In her decision, the ALJ gave "little weight" to Dr. Bakhai's opinions of Plaintiff's functional capacities, and accorded "greater weight" to the estimation of Dr. Meng, in part because his opinion was based on a thoroughly documented physical examination. (T. 24.) Under the treating physician rule, according less weight to the Plaintiff's treating physician than the consulting examiner could be considered error, but only if the conclusions of the two authorities were in conflict. Here the opinions of the consulting examiner and Glover's treating physicians are consistent with each other, and therefore the ALJ committed no error.

C. **Failure to Pursue Physical Therapy and Surgical Treatment.** The record indicates that Glover was referred to physical therapy several times between October 31, 2003 and May 19, 2006. (T. 242, 333, 345). In November and December 2003, she attended only two of fourteen scheduled appointments, including the intake examination. (T. 314). Between March 24 and April 20, 2004, she attended only three of nine scheduled sessions. (T. 300.) In December 2004, she reported to Jeanette Nagel, RN, that "PT helps". From that date until June 20, 2006, the record does not show that she undertook any physical therapy at all. From June 20 through July 25, 2006 she went to physical therapy eight times. (T. 273.)

On February 15, 2007, Glover underwent an interlaminar epidural steroid injection to relieve the pain caused by her herniated discs. (T. 401.) A little over one month later, she

reported that she had no pain, but three days later on March 30, 2007, she reported to Dr. Bakhai that the "epidural didn't work." (T. 405.) She had been offered this procedure, and rejected it, at least once before. (T. 24.)

It is well established that "a remediable impairment is not a disability." Dumas v. Schweiker, 712, F.2d 1545, 1553 (2d Cir. 1983) (failure to treat hypertension and diabetes through weight loss disqualifies claimant); Coleman v. Califano, 462 F. Supp. 77, 81 (N.D.N.Y 1978) (failure to observe prescribed weight loss diet and use surgical appliance disqualifies claimant); Fields v. Secretary of Health Education and Welfare, 444 F. Supp. 1003, 1005 (S.D.N.Y. 1977) (failure to take antiseizure medications does not qualify as disability). The Social Security regulations provide that a plaintiff may be found "not disabled" if without good cause, she chooses to be noncompliant with treatment recommendations. 20 C.F.R. §404.1530.

In the present case, not only did Glover fail to follow a prescribed course of treatment, and refuse to undergo a procedure that had the potential to relieve her pain, she did so while acknowledging that the treatment had real benefits for her. (T. 273.) One or two missed appointments would be excusable, even understandable given the challenges plaintiff faces in terms of transportation (she is dependent on her family or public transportation to get to and from her appointments, T. 464).

However her limited attendance record indicates that Glover failed to properly treat her back pain, which failure renders her ineligible for disability benefits.

## **CONCLUSION**

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
March 18, 2010